IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



CHYSTOPHER LEE,

    Plaintiff,

v.                                                     Civil Action No. **3:08cv99**

PATRICK GURNEY, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Muslim inmate proceeding *pro se*, filed this action alleging that Defendants Gurney, Vaughn, and Washington violated his rights by not allowing him to engage in group prayer in the prison recreation yard.[1] Specifically, Plaintiff contends:

    Claim One    Defendants violated Plaintiff's rights under the Equal Protection Clause[2] by promulgating and enforcing a ban on group prayer in the recreation which "singles out religious practices observed only [by] Sunni adherents." (Compl. ¶ 35.)[3]

    Claim Two    Defendants Vaughn and Washington violated Plaintiff's rights under the First Amendment when they prohibited him from engaging in any group prayer on the prison recreation yard.[4]

---

[1] Patrick Gurney is the Assistant Warden of Nottoway Correctional Center ("NCC"). G.K. Washington is the Regional Director for the Central Region of the Virginia Department of Corrections ("VDOC"). Defendant Vaughn has not been served with process. The Clerk shall alter the docket to reflect the correct spelling of Defendant Vaughn's name.

[2] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[3] The Court's citations to Plaintiff's complaint reference the numbered paragraphs in the "STATEMENT of THE CLAIM/ESTABLISHMENT OF THE CLAIM" sections of Plaintiff's complaint.

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I.

| | |
|---|---|
| Claim Three | Defendants violated Petitioner's rights under the Due Process Clause[5] when they forced him to pray in a manner contrary to his religious beliefs. |
| Claim Four | Defendants violated Plaintiff's rights under the Religious Land Use and Institutionalized Person's Act[6] by promulgating and enforcing a ban on group prayer in the recreation yard. |

Plaintiff demands injunctive relief and monetary damages. Defendants Gurney and Washington have moved for summary judgment with respect to Claims One, Two, and Four.[7] Plaintiff has responded. The matter is ripe for disposition.

## I. Standard For Summary Judgment

Summary judgment must be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate

---

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[6] 42 U.S.C. § 2000cc-1(a)(1)-(2).

[7] Defendants Gurney and Washington have not addressed Claim Three.

'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 296 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In support of their motion for summary judgment, Defendants Gurney and Washington (hereinafter collectively "Defendants") have tendered an affidavit from Harry L. Diggs, the current Warden of NCC. Additionally, Defendants have submitted copies of departmental operating procedures ("DOPs"). In opposition to the motion for summary judgment, Plaintiff offers his verified complaint and his sworn response to the motion for summary judgment. In light of the foregoing principles and submissions, the facts set forth below are presumed true for purposes of the motion for summary judgment.

## II. Summary Of Pertinent Facts

Plaintiff is a Sunni Muslim. Plaintiff has been incarcerated at NCC since 1998.

### A.   Salat

As a Sunni Muslim, Plaintiff is obliged to perform the Salat, "Prayer for Forgiveness," five times per day. (Compl. ¶ 3.) The general time frame for these five obligatory prayers is as follows: 4:06 a.m, 1:09 p.m., 5:13 p.m., 8:27 p.m., and 9:27 p.m. (Compl. ¶ 6.) Plaintiff's religion requires that "when he is gathered with two or more of his religious brothers during time for salat, . . . they also are required to make salat together." (Pl.'s Aff. in Resp. to Summ. J. ¶ 8.)

During his incarceration at NCC, Plaintiff "participated in and/or led Group Prayer (two or more participants) on both recreation yards without interrupting or distracting normal recreational activities from his arrival in 1998 through 2007." (Compl. ¶ 2.) On May 13, 2007, Plaintiff was called to the watch commander's office and informed that he could no longer lead or participate in group Salat on the recreation yard. Plaintiff filed grievances challenging this restriction. On June 27, 2007, Defendant Vaughn, the former Warden of NCC, responded to Plaintiff's grievance. (Defs.' Br. in Supp. of Mot. for Summ. J. Encl. B.) Defendant Vaughn informed Plaintiff that, pursuant to the new policy set forth in DOP § 841.3, Plaintiff could not engage in group prayer on the recreation yard. Plaintiff appealed. On July 17, 2007, Defendant Washington upheld Defendant Vaughn's decision.

**B.     Defendants' Policy Restricting Group Religious Activity on the Recreation Yard and Justification For Such A Policy**

The VDOC promulgated DOP § 841.3, a new DOP for religious programs with an effective date of April 1, 2007. (Defs.' Br. in Supp. of Summ. J. Encl. A.) Specifically, DOP § 841.3 provides, in pertinent part that: "Religious services and group activities shall be visually observed . . . and accommodations for religious programs shall be in accordance with requirements concerning a facility's security level, safety of the offender population, and orderly operations." (Defs.' Br. in Supp. of Summ. J. Encl. A, § IV, A.6.) For Level 4 facilities, such as NCC,[8] the new DOP requires that religious services and group activities "shall have in-room DOC staff supervision at all times, whether or not volunteers are present." (Defs.' Br. in Supp.

---

[8] NCC is a Security Level 4 facility. (Defs.' Br. in Supp. of Summ. J. Ex. I ¶ 5 (hereinafter "Diggs's Aff.").)

4

of Summ. J. Encl. A, § IV, A.6(a).) Prison officials at NCC have interpreted this DOP to require that all group religious activities be conducted indoors, in a room.

At NCC, the VDOC staff provide in-room opportunities for religious meetings for Sunni Muslims every week, on Mondays and Wednesdays from 4:45 p.m. to 6:45 p.m. (Diggs's Aff. ¶ 7.) Additionally, the VDOC staff provides supervision for Jumah, a weekly prayer, every Friday from 12:45 p.m. until 1:45 p.m. (Diggs's Aff. ¶ 7.) During these and all other inmate religious meetings, prison staff are assigned to the room to maintain control and order, which may include up to 80 inmates. (Diggs's Aff. ¶ 8.)

During recreation periods, prison staff must supervise up to 165 inmates on the recreation yard. Warden Diggs explains that guards cannot effectively supervise gathering of inmates on the recreation yard:

> When inmates are on the recreation yard they are able to spread out and cause numerous distractions which security staff may not be able to address appropriately due to the sheer size of the recreation yard. Also, inmates may claim to be gathering for religious reasons, but could in fact be planning a riot or participating in gang related activities. Security staff may not be able to identify what is happening before an incident occurs and this could cause a safety issue for other inmates and staff on the recreation yard. Gatherings of inmates on the recreation yard are never permitted and must be prevented in order to maintain a secure institution.

(Diggs's Aff. ¶ 8.) According to Warden Diggs, when "inmates are required to meet in a 'in room' setting they are more confined and easily maintained." (Diggs's Aff. ¶ 8.) Thus, according to Warden Diggs, "[n]o inmates from any religious denomination are permitted to gather for group prayer unless it is during their scheduled meeting time with the appropriate supervision." (Diggs's Aff. ¶ 8.)

### C.     Plaintiff's Evidence That Defendants' Security Concerns Are Exaggerated

Sunni Muslims, including Plaintiff, have been conducting group Salat on the NCC recreation yard since at least 1998. (Compl. ¶ 23.) Plaintiff has not observed any incidents of unrest because of the group Salat. (Compl. ¶ 23.) There are only 2-6 Sunni Muslim adherents who wish to engage in group Salat on the recreation yard at any given time. (Compl. ¶ 23.) The group Salat lasts less than ten minutes. (Compl. ¶ 23.)

### III. Analysis

For the reasons stated below, the Court concludes that Defendants are entitled summary judgment with respect to Plaintiff's equal protection claim (Claim One) and free exercise claim (Claim Two), but not with respect to his RLUIPA claim (Claim Four).

### A.     Equal Protection

In order to survive summary judgment on his equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The record demonstrates that Plaintiff was treated the same as all other inmates at NCC; like all other inmates, he was prohibited from engaging in group religious activity on the recreation yard. (Diggs's Aff. ¶ 8.); *Cooper v. Tard*, 855 F.2d 125, 129-30 (3rd Cir. 1988) (rejecting similar equal protection claim). Accordingly, Claim One will be DISMISSED.

### B.     Free Exercise of Religion

Defendants concede that prohibiting Plaintiff from participating in group Salat substantially burdened Plaintiff in the free exercise of his religion. Defendants contend that their

actions pass constitutional muster because they satisfy the four-factor "reasonable relationship" test for analyzing the constitutionality of regulations that burden prisoners' fundamental rights set forth in *Turner v. Safley*. 482 U.S. 78, 89-91 (1987). *Turner* reconciled the principles that inmates retain certain important constitutional protections with the deference owed to prison administrators "by holding that restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (internal citation and quotation marks omitted). In assessing whether a regulation is reasonable, courts must consider (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89-90 (internal quotation marks omitted). Significantly, in conducting this inquiry, "[t]he burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (*citing Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).

Under the first factor, Defendants contend that restricting group religious activity to supervised in-room meetings promotes the legitimate penological interest of security. As noted by Defendants, unsupervised meetings could be used to plan a riot or for gang related activity.

There is a valid rational connection between prohibiting unsupervised inmate group religious activity on the recreation yard promoting institutional security. *Cooper*, 855 F.2d at 129-30 (upholding similar ban); *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 532 (E.D. Pa. 2002) ("Clearly, there is a valid rational connection between limiting close group activity [on the recreation yard] and the prison's interest in controlling gang activity."). Thus, the regulation passes muster under the first factor.

The second *Turner* factor considers whether alternative means of exercising the right exist. As the right to free exercise must be construed "sensibly and expansively," *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989), it must be determined whether Plaintiff retains the ability to participate in other requirements of his religion. *O'Lone*, 482 U.S. at 352. Plaintiff has offered very little evidence on this score. Other than group Salat, Plaintiff generally complains that Warden Vaughn has restricted "when and where religious headgear could be worn." (Comp. ¶ 5.) Plaintiff, however, does not explain the significance of wearing headgear or provide any specific description of the restrictions imposed by Warden Vaughn. Moreover, the record establishes that Plaintiff's opportunity to engage in individual prayer is largely unrestricted and that Plaintiff enjoys the opportunity to participate in congregational worship three times per week. Accordingly, the second factor favors the reasonableness of Defendants' restriction.

The third factor measures the impact of accommodating an inmate's religious exercise on the resources available in the prison. Defendants contend that allowing group gatherings on the recreation yard would require the hiring of additional security personnel, so that closer supervision could be provided. Thus, this factor does not favor Plaintiff. *See Veney v. Wyche*, 293 F.3d 726, 735 (4th Cir. 2002).

Under the fourth factor, Plaintiff bears the burden of suggesting an easy alternative that "fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 91. No such alternative has been suggested by Plaintiff. Instead, Plaintiff posits that Defendants' security concerns could be allayed by providing prison officials with a prayer schedule so that the prison officials would know the times during the recreational period the Sunni inmates would be gathering on the yard. Plaintiff fails to explain how the provision of the prayer schedule would ensure that inmates were not using the meeting as subterfuge for gang activity or for planning a riot or for other disruptive activity. Thus, this fourth factor favors Defendants. *Turner*, 482 U.S. at 90 (*citing Block v. Rutherford*, 468 U.S. 576, 587 (1984)).

Plaintiff persists that the limitation of group religious activity to a supervised, in-room setting is an exaggerated response to security concerns. Plaintiff notes that for ten years he has led and participated in group Salat on the recreation yard without disrupting prison security. Nevertheless, prison officials need not wait for a particular disruption to occur before they can take reasonable measures to abate it. *See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 470 (4th Cir. 1999). Rather, the Supreme Court has admonished that "[w]hen confronted with a threat to order, '[r]esponsible prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot.'" *Id.* (second alteration in original) (*quoting Jones*, 433 U.S. at 132-33). Considering the factors discussed above, Plaintiff fails to demonstrate that the prohibition on group religious activity on the prison yard is not rationally related to the legitimate penological interest of security. Accordingly, Defendants' motion for summary judgment with respect to Claim Two will be GRANTED.

## C.   RLUIPA

RLUIPA, however, provides considerably more protection for an inmate's religious exercise than does the First Amendment. *See Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006); *see Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009) (No. 08-7681) (noting that district court's conclusion that inmate had alternative ways to practice his religion was not relevant under RLUIPA), *available at* 2009 WL 971454, at *1. RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Furthermore, "'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once a plaintiff establishes a prima facie case, the defendants bear the burden of persuasion on whether their practice is the least restrictive means of furthering a compelling governmental interest. *Lovelace*, 472 F.3d at 185 (*citing* 42 U.S.C. § 2000cc-1(a)).

Defendants concede that the prohibition on group religious activity in the recreation yard substantially burdens Plaintiff's religious exercise. (Defs.' Br. in Supp. of Summ. J. ¶ 10.) Defendants contend that Plaintiff's RLUIPA claim must be dismissed because they have demonstrated a compelling governmental interest and the ban on religious gatherings in the recreation yard is the least restrictive means available to further that interest. In assessing those arguments, "due deference must be given 'to the experience and expertise of prison and jail

administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Smith v. Ozmint,*--- F.3d ---, No. 07-6558, 2009 WL 2366134, at *4 (4th Cir. July 31, 2009) (*quoting Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005)). In this regard, the Supreme Court has admonished that the security concerns of prison officials "deserve 'particular sensitivity.'" *Id.* (*quoting Cutter,* 544 U.S. at 722). Nevertheless, as discussed below, Defendants fail to adequately demonstrate that they have chosen the least restrictive means to further a compelling interest.

"To meet its burden to show a compelling interest, [Defendants'] 'first job' is 'to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs.'" *Id.* at *5 (*quoting Lovelace,* 472 F.3d at 190). Generally, "[p]rison safety and security are compelling government interests." *Singson v. Norris,* 553 F.3d 660, 662 (8th Cir. 2009) (*citing Fegans v. Norris,* 537 F.3d 897, 906 (8th Cir. 2008)). Nevertheless, "[e]ven in light of the substantial deference given to prison authorities, the mere assertion of security . . . is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement." *Washington v. Klem,* 497 F.3d 272, 283 (3d Cir. 2007). Rather, prison officials must supply adequate record evidence that the particular security concerns that prompted the policy are compelling and are advanced by their policy. *See Smith,* 2009 WL 2366134, at *5 (concluding prison officials failed to provide adequate evidentiary support for their assertion that their security concerns constituted a compelling governmental interest); *Lovelace,* 472 F.3d at 190-91 (same).

Here, Defendants contend that group religious activity on the recreation yard compromises institutional security. The sum of their evidence supporting the contention that limiting such activity furthers a compelling interest in security is Warden Diggs's statements that groups of inmates are more easily managed in an in-room setting and that group religious gatherings of inmates on the recreation yard may be used as a subterfuge for gang activity or for planning a riot. (Diggs's Aff. ¶ 8.) Defendants, however, do not point to any evidence that religious gatherings on the NCC recreation yard or at any other VDOC facility ever have been used by inmates for such subversive activities. *See Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 989 (8th Cir. 2004) ("The threat of racial violence is of course a valid security concern, but to satisfy RLUIPA's higher standard of review, prison authorities must provide some basis for their concern that racial violence will result from any accommodation of [an inmate's] request." (*citing Ochs v. Thalacker*, 90 F.3d 293, 296-97 (8th Cir. 1996))). Moreover, Defendants do not counter Plaintiff's evidence that for ten years he conducted group Salat on the NCC recreation yard without any incident. *See, e.g., Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 40 (1st Cir. 2007) (concluding inmate's "seven-year track record as a preacher, which is apparently unblemished by any hint of unsavory activity" cast doubt on prison officials' assertion that a ban on his preaching promoted compelling interest in institutional security). Thus, it is doubtful that Defendants have adequately shouldered their burden of demonstrating that no material questions of fact exist as to whether the ban on group religious activity in the recreation yard furthers a compelling state interest.

Even if one were to assume that the threat to prison security from inmates using group religious activity on the yard as a guise for gang activity or for planning riots constitutes a

compelling interest, Defendants fail to demonstrate that they have employed the least restrictive means to address that concern. "In other strict scrutiny contexts, the Supreme Court has suggested that the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." *Washington*, 497 F.3d at 284 (*citing Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005) (*in turn citing United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 824 (2000); *City of Richmond v. J.A. Croson*, 488 U.S. 469, 507 (1989))). Thus, in order to carry their burden with respect to summary judgment, prison officials generally must demonstrate they considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. *Id.*; *Spratt*, 482 F.3d at 41; *Murphy*, 372 F.3d at 989. Defendants have not submitted any evidence to this effect. *See Smith*, 2009 WL 2366134, at *6 (vacating grant of summary judgment where prison officials failed to demonstrate why forcible shaving, rather than some lesser restrictions, was necessary to enforce grooming policy). Nor have Defendants directed the Court to any case where a court concluded that a blanket ban on all group religious activity in the prison yard was the least restrictive means of furthering security interests similar to those they advance here. Indeed, it appears that Defendants' security concerns might be addressed simply by providing direct staff supervision of the brief group Salat. (Defs.' Br. in Supp. Of Summ. J. ¶ 9.) Defendants, however, have not demonstrated that either budgetary or staffing concerns precluded such an accommodation. *See Newby v. Quarterman*, 325 F. App'x 345, 352 (5th Cir. 2009) (No. 06-11233), *available at* 2009 WL 1158854 at *5 (vacating motion for summary judgment where prison officials failed to explain why security concerns could not be addressed by staff supervision of group worship). Because Defendants have failed to demonstrate that they have employed the least restrictive means to further a

compelling interest, the motion for summary judgment will be DENIED with respect to Claim Three. Accordingly, the motion for summary judgment (Docket No. 21) will be GRANTED IN PART and DENIED IN PART.

An appropriate Order shall issue.

Dated: 9-24-09
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge